IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOHN SHELL, | ) | C/A No. 2:15-CV-04213-MBS-MGB |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SOUTH CAROLINA DEPARTMENT | ) | |
| OF MENTAL HEALTH, LATRICE COOPER, | ) | |
| & TINA HOWELL, | ) | |
| DEFENDANTS. | ) | |
| | ) | |

The Plaintiff, through counsel, brings this action against the South Carolina Department of Mental Health ("DMH"). The Plaintiff is currently in the custody of the DMH pursuant to the South Carolina Sexually Violent Predator Act, S.C. Code §§ 44-48-10 through 170 ("SVPA"). This matter is before the court on Defendant South Carolina Department of Mental Health's Motion for Summary Judgment. (Dkt. No. 30.) This matter is referred to the undersigned United States Magistrate Judge for consideration. For the reasons stated herein, the undersigned recommends that Defendant South Carolina Department of Mental Health's Motion for Summary Judgment (Dkt. No. 30) be granted.

The Plaintiff brought this action on or about August 20, 2015.[1] (Dkt. No. 1 at 1.) The Plaintiff filed an Amended Complaint on September 8, 2015. (*Id*. at 3.) Defendant DMH filed an Answer on October 14, 2015 (Dkt. No. 5.) On October 21, 2015, Defendant Howell filed a Motion for Summary Judgment, and Defendant Latrice Cooper filed an Answer. (Dkt. No. 6;

---

[1] This action was removed from state court. The Consent Notice of Removal has the Amended Complaint attached, not the original Complaint. (Dkt. No. 1.) However, the Verification of the original Complaint is included and states that the Complaint was filed "on or about August 20, 2015." (Dkt. No. 1-1 at 1.)

1

Dkt. No. 9). Defendant Howell's Motion for Summary Judgment was granted, and she was dismissed as a defendant pursuant to the district court's Order dated August 23, 2016.[2] (Dkt. No. 26.) Defendant Cooper filed her Motion for Summary Judgment on July 22, 2016. (Dkt. No. 19.) Defendant Cooper's Motion for Summary Judgment was granted, and she was dismissed as a defendant pursuant to the district court's Order dated February 23, 2017.[3] (Dkt. No. 37.) The only remaining Defendant is the South Carolina Department of Mental Health ("DMH"). The Plaintiff alleges that DMH was negligent in its supervision and training of Ms. Howell and Ms. Cooper. (Dkt. No. 1-1.) The DMH filed its Motion for Summary Judgment on November 2, 2016. (Dkt. No. 30.) The Plaintiff responded to the Defendant's Motion on December 5, 2016. (Dkt. No. 33.) The DMH filed a reply brief on December 12, 2016. (Dkt. No. 34.)

## Alleged Facts

The Plaintiff is civilly committed under the SVPA and housed at the Broad River Correctional Institute pursuant to a contract between DMH and the South Carolina Department of Corrections ("SCDC"). (Dkt. No. 12.) The Plaintiff alleges that the actions of Latrice Cooper and Tina Howell set back the Plaintiff in his treatment in the SVPP. (Dkt. No. 1-1.) The Plaintiff alleges that these actions were related to DMH's negligence in supervising and training Ms. Cooper and Ms. Howell. (*Id.*)

Latrice Cooper is a former employee of DMH who was specifically employed within the Sexually Violent Predator Program ("SVPP") as a case manager overseeing the Plaintiff's treatment. (Dkt. No. 1-1 at 4.) The Amended Complaint alleges the following:

> That on some date between August 1, 2011 and August 2013, the Defendant Cooper, abused her position of authority over the Plaintiff in order to have the

---

[2] The motion was granted on the basis of the case being filed outside the statute of limitations.
[3] The motion was granted on the basis of Ms. Cooper not being a state actor at the time of the alleged events.

2

> Plaintiff involve [sic] in an inappropriate relationship with Cooper. Defendant Cooper used her position as a case manager to engage in sexually explicit conversations and letters with the Plaintiff.

(Dkt. No. 1-1 at 5.) The Plaintiff alleges that Defendant Cooper's acts, along with the acts of Defendant Howell, resulted in him having setbacks with his treatment in the SVPP. (*Id.* at 5.) The Plaintiff additionally alleges that the Defendants' acts led to him having to stay in the SVPP longer and lose privileges within the program. (*Id.* at 6.) Defendant Cooper left the employ of the Department of Mental Health in April of 2014. (Dkt. No. 19-2 at 3-4.)

The Plaintiff was deposed on March 11, 2016. (Dkt. No. 19-2 at 1.) During his deposition, the Plaintiff made the following statements:

> Q. Now we're going to talk about Ms. Cooper. Tell me about your relationship with her.
> A. Ms. – didn't nothing start with Ms. Cooper until after Ms. Cooper left.
>
> Q. I believe that was sometime in mid-to-late April 2014? Does that sound about right?
> A. Sounds about right. Can't tell you exact.
>
> Q. She had already left the Department of Mental Health; right?
> A. Yes.
> . . .
> Q. So, basically, before she left the department, there is nothing romantic or sexual going on. She was your case manager; correct?
> A. Yes.
> . . .
> Q. Why did you start this one with Cooper?
> A. Because in a way, I felt that it wasn't wrong. She wasn't working here no more, and the fact that she knew what I went through with Ms. Cooper – I mean with Ms. Howell and . . .[.]
> . . .
> Q. Okay. You said nothing happened while she was here?
> A. True, but the simple fact that this woman learned enough about me to know how to come at me, know how to get me, then it's almost like she still worked here, because if she hadn't met – come across me, I wouldn't have never met her.
> . . .
> Q. Referring to your complaint, I believe it is Exhibit 6, paragraph ten, which is the allegation as to Dr. Cooper. It says that she used her position as a case manager to engage in sexually explicit conversations and letters with you. It's my

> understanding, based on your testimony, that the sexually explicit conversations and letters took place after she left the department. Is that correct?
> A. True.
> . . .
> Q. Your testimony, from what I understand, is Dr. Cooper was not employed by the Department of Mental Health when she began other – began having sexually explicit conversations and exchanging letters with you. Is that accurate?
> A. Yes.

(Dkt. No. 19-2 at 3, lines 13-24; 4, lines 6-9; 6, lines 3-7; 7, line 24-8 , line 5; 9, lines 4-13; 10, lines 1-6.)

The Plaintiff additionally testified regarding two incidents with Defendant Cooper that he alleges occurred prior to her departure. The first incident allegedly occurred when Defendant Cooper was walking in front of the Plaintiff and she asked the Plaintiff, "You [sic] looking at my bootie?" The Plaintiff replied, "Yes." However, Dr. Cooper never made another comment about it, and the Plaintiff was not written up for responding. (Dkt. No. 19-2 at 4, lines 16-21.) The second incident allegedly occurred three or four days before Defendant Cooper left DMH. The Plaintiff alleges that he and other SVP participants were in a group session with Defendant Cooper in which the conversation ended up on the topic of sex and oral sex. (*Id.* at 5, line 10-25.) The Plaintiff alleges that Defendant Cooper made a comment to the group regarding her sexual preferences. (*Id.*) The Plaintiff alleges that this incident changed his perception of Defendant Cooper, but that he did not engage in a relationship or any other inappropriate contacts or letters at that time. (*Id.* at 10-11.)

Tina Howell is a former employee of DMH who was specifically employed within the Sexually Violent Predator Program ("SVPP") as a public safety officer until November 9, 2011. (Dkt. No. 1-1 at 4; Dkt. No. 6-2.) On August 15, 2013, an Annual Review Report ("Report") was issued by SVPP pursuant to S.C. Code §44-48-110. (Dkt. No. 12-1.) In the Report, Dr. Michele Gehle, the Plaintiff's evaluator, notes that while the Plaintiff was committed within SVPP, he

"had several serious rule infractions that were sexually related." (*Id.* at 8.) Several of these infractions arose out of an incident in November of 2011, where the Plaintiff "had an inappropriate phone relationship with an employee." (*Id.* at 9.)

On November 8, 2011, a female DMH employee[4] was arrested for Public Official-Misconduct in Office as result of her inappropriate phone relationship with the Plaintiff and was thereby terminated by DMH on November 9, 2011 (*Id.* at 9.) The Report further states that in December of 2011, the Plaintiff received the following infractions as a result of the November phone relationship:

1. Unauthorized phone communication (ongoing and sexually explicit),
2. Abuse of Phone Privileges,
3. Giving False Information During an Investigation."[5]

(*Id.*) The Plaintiff was sanctioned as a result of the above infractions.[6] (*Id.*) In February of 2012, the Plaintiff violated a "No Contact Order" by writing to the above mentioned former DMH employee and "lost his level of privileges for [thirty] days" as a result. (Dkt. No. 12-1 at 9.) In February of 2013, it was alleged that the Plaintiff engaged in sex with a cellmate. Although the Plaintiff denied these allegations, he was "referred to his therapist and his treatment team for follow up." (*Id.*)

Dr. Gehle determined that the Plaintiff was unfit to be released from SVPP due to his pervasive sexually violent behavior. (*Id.* at 13.) The Plaintiff alleges that at some time between

---

[4] The employee referenced was presumably Ms. Howell.
[5] The Plaintiff allegedly was untruthful to SLED investigators and claimed that he was speaking to an individual other than the female DMH employee in the phone conversations. (Dkt. No. 12-1 at 9.)
[6] The Plaintiff's sanctions included the following: "[Seven] days of Therapeutic Room Restriction, [seven] days of Early Bedtime, loss of level for at least [thirty] days, [six] months of restricted phone privileges, and … no contact with the staff member (by letters, phone calls, or via third parties)."

August 1, 2011, and August, 2013, Tina Howell sexually engaged the Plaintiff physically and via "letters, phone calls, etc.," thereby causing the Plaintiff to "relapse and experience a set-back in his treatment." The Plaintiff alleges that Tina Howell's acts have hindered the Plaintiff's ability to recover, thus prolonging his confinement. (Dkt. No. 1-1 at 5, ¶¶ 11-15.)

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id*. (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## ANALYSIS

The Plaintiff states two causes of action in his Amended Complaint against DMH. (Dkt. No. 1-1.) The Plaintiff alleges a cause of action for negligent supervision and a cause of action for negligent training.[7] (*Id.*) While not stated in the Amended Complaint, the Plaintiff's claims are being brought under the South Carolina Tort Claims Act ("the Act"), § 15-78-10 *et seq.* The Act is the exclusive remedy for any tort committed by an employee of a governmental entity.

---

[7] The Amended Complaint contained claims under 42 U.S.C § 1983 against Ms. Howell and Ms. Cooper. (Dkt. No. 1-1 at 6-7.) Both claims against Ms. Howell and Ms. Cooper were dismissed by the district court. The Amended Complaint does not bring a claim under § 1983 against DMH.

"An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except…if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70. The Act "governs all tort claims against governmental entities." *Hawkins v. City of Greenville*, 358 S.C. 280, 292, 594 S.E.2d 557, 563 (Ct. App. 2004) (citing *Flateau v. Harrelson,* 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct.App.2003)). All governmental entities may be held liable for their torts as a private individual would be liable subject to the limitations and exemptions of the Act. *Id.* (citing S.C. Code Ann. § 15-78-40 (Supp. 2003)). S.C. Code § 15-78-30(d) defines "governmental entity" as "the State and its political subdivisions." Section 15-78-20(b) of the Act states, "[t]he General Assembly in this chapter intends to grant the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability and suit for any tort except as waived by this chapter." The limitations and exemptions in the Act must be liberally construed in order to limit the liability of the State. *Hawkins,* 358 S.C. at 292, 594 S.E.2d at 563.

When bringing an action under the Act, the proper defendant is the agency or political subdivision for which the employee was acting.

> [A] person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually, unless the agency or political subdivision for which the employee was acting cannot be determined at the time the action is instituted. In the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant.

S.C. Code § 15-78-70(c); *see also Proveaux v. Med. Univ. of S. Carolina*, 326 S.C. 28, 30, 482 S.E.2d 774, 775 (1997).

The Legislative Findings codified in the Act reveal the General Assembly's intent stating that "[t]he remedy provided by this chapter is the **exclusive civil remedy** available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15-78-70(b)." S.C. Code § 15-78-20 (emphasis added). In § 15-78-70(b), the Act provides that "[n]othing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code § 15-78-70(b).

Allegations of negligent hiring and supervision fall under the Act. *See DiLorenzo v. S.C. Dep't of Corr.*, No. 2:10-CV-02356-RMG, 2010 WL 5389994, at *3 (D.S.C. Dec. 22, 2010). A claim for negligent training falls under the Act as well. *Singleton v. Town of Estill*, No. 9:12-cv-3506-SB, 2013 WL 4027765, at *6 (D.S.C. Aug. 6, 2013) (holding that a plaintiff's claims, which included a claim of negligent training by the town of Estill, were "brought pursuant to the South Carolina Tort Claims Act.") Whether negligent training and negligent supervision are distinct torts in South Carolina is not settled. *See Holcombe v. Helena Chem. Co.*, No. 2:15-CV-2852-PMD, 2017 WL 713921, at *5 (D.S.C. Feb. 23, 2017) (holding that "negligent training is merely a specific negligent supervision theory by another name."); *Gainey v. Kingston Plantation*, No. 4:06-cv-3373-RBH, 2008 WL 706916, at *7 n. 4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for negligent training separate and apart from one for negligent supervision."); *but see Hamilton v. Charleston Cty. Sheriff's Dep't,* 399 S.C. 252, 254, 731 S.E.2d 727, 728 (Ct. App. 2012) (affirming the trial court which "granted the [defendant's] directed verdict motion on the negligent training claim, but denied the [defendant's] motion on the negligent supervision claim").

An employer is liable under a theory of negligent supervision when an employee:

(1) is upon the premises of the employer, or is using a chattel of the employer,

(2) the employer knows or has reason to know that he has the ability to control his employee, and

(3) the employer knows or should know of the necessity and opportunity for exercising such control.

*Moore by Moore v. Berkeley Cty. Sch. Dist.*, 326 S.C. 584, 590, 486 S.E.2d 9, 12 (Ct. App. 1997) (citing *Degenhart v. Knights of Columbus,* 309 S.C. 114, 115-17, 420 S.E.2d 495, 496 (1992)). An employer's liability under a theory of negligent supervision is limited to actions taken by the employee in in her capacity as an agent of the employer. *Degenhart,* 309 S.C. at 17, 420 S.E.2d at 496.

### a. Negligent Training and Supervision of Latrice Cooper

No genuine issue of material fact exists as to the DMH's negligent training and supervision of Ms. Cooper, and DMH is entitled to summary judgment as a matter of law. The Plaintiff alleges that DMH is liable to the Plaintiff for the alleged negligent supervision and training of Ms. Cooper. (Dkt. No. 1-1.) The Plaintiff alleges that Ms. Cooper engaged in an inappropriate sexual relationship through conversations and letters with the Plaintiff. (*Id.*) The Plaintiff stated in his deposition, as quoted *supra*, that any inappropriate sexual communications between Ms. Cooper and the Plaintiff occurred ***after*** Ms. Cooper left her employment with DMH. (Dkt. No. 19-2 at 3, lines 13-24; 4, lines 6-9; 6, lines 3-7; 7, line 24 – 8 , line 5; 9, lines 4-13; 10, lines 1-6.)

In viewing the facts in the light most favorable to the Plaintiff, DMH is entitled to summary judgment. None of the elements required by *Moore* are met by the Plaintiff's version of events. At the time the conduct occurred, Ms. Cooper was not on DMH's premises or using any chattel belonging to DMH. DMH had no ability to control Ms. Cooper because she was not

9

an employee of DMH. DMH had no way control Ms. Cooper, who was not an employee, and therefore could not have known of any necessity or opportunity to control her.

Additionally, the Plaintiff, who is represented by counsel, did not address Ms. Cooper at all in Plaintiff's Return and Opposition to Defendant South Carolina Department of Mental Health's Motion for Summary Judgment ("Return and Opposition"). (Dkt. No. 33.) The Plaintiff only addressed Ms. Howell and only argued that his claims against DMH were not barred by the statute of limitations. The Plaintiff did not address Ms. Cooper or her employment status in any way. Therefore, this court additionally finds that the Plaintiff has conceded and abandoned his claims against DMH regarding Ms. Cooper. *See Polite v. CACI, Inc.*, No. 3:15-01520-MGL, 2016 WL 6830971, at *1 (D.S.C. Nov. 21, 2016) (citing *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.")).

   b. **Negligent Training and Supervision of Tina Howell**

No genuine issue of material fact exists as to DMH's negligent training and supervision of Ms. Howell, and DMH is entitled to summary judgment as a matter of law. The Defendants argue that the Plaintiff's claims against DMH regarding Ms. Howell are barred by the statute of limitations. The district court in this case has previously adopted and incorporated into an Order the Report & Recommendation of the undersigned, which concluded that the Plaintiff's 42 U.S.C § 1983 claims against Defendant Howell accrued on December 31, 2011 at the latest and were barred by a three (3) year statute of limitations. (Dkt. No. 18; *see also* Dkt. No. 18 at 7.)

Any cause of action under the Act is subject to a two (2) year statute of limitations unless the Plaintiff filed a verified claim with the State Fiscal Accountability Authority within one (1) year of the discovery of the loss. S.C. Code §15-78-110; S.C. Code § 15-78-80. If a plaintiff

files a verified claim with the State Fiscal Accountability Authority, then the claim is subject to a three (3) year statute of limitations.[8] *Id.* To be within the statute of limitations under the Act, a claim must be brought "within two years after the date the loss was or should have been discovered..." subject to the exception for a verified claim. S.C. Code §15-78-110.

The Plaintiff argues that the statute of limitations did not begin to accrue until he became aware on August 20, 2013, of the loss or harm that resulted from his sexual contact with Defendant Howell. (Dkt. No. 33.) The Plaintiff argues that he did not discover the harm until he received his Report. (Id.) Defendant Howell was terminated from her employment at SCDC on November 9, 2011. (Dkt. No. 6-2.) In December of 2011, the Plaintiff "received numerous infractions for engaging in a relationship" with Defendant Howell. (Dkt. No. 12-1 at 9.) In February 2012, the Plaintiff was reprimanded again for continuing to communicate with Defendant Howell. (*Id.*) The Plaintiff did not file this action, according to the Plaintiff, until August 20, 2015. (Dkt. No. 1-1.)

The Plaintiff was aware of his inappropriate sexual conduct as it happened because he was a participant in the conduct. *c.f. Johnson v. Elizabeth Day Program*, No. 05-CV-4035-JAG, 2005 WL 2372964, at *2 (D.N.J. Sept. 27, 2005) (holding in a case where the plaintiff alleged sexual abuse by the supervisor of a court ordered juvenile day program that the statute of limitations began to run when he turned 18 years old).[9] The Plaintiff knew, or had reason to know, of the injuries that gave rise to the cause of action well before he read the Report. Even if the Plaintiff lacked actual knowledge, he certainly had sufficient knowledge to put him on notice

---

[8] There is no evidence in this case that the Plaintiff filed a verified claim with the State Fiscal Accountability Authority. Additionally, the Plaintiff applies a two (2) year statute of limitations in his arguments found in his Return and Opposition. (Dkt. No. 33.)

[9] The Plaintiff in the case at bar was 47 years old on August 20, 2013. Therefore, the Plaintiff does not have the benefit of having the statute of limitations toll until he reaches the age of majority.

after being reprimanded for his bad behavior in December of 2011. At that time, he was formally sanctioned for his conduct and received punishment. (Dkt. No. 12-1 at 9.) Assuming his sanction and punishment occurred on the latest possible date, December 31, 2011, the statute of limitations ran out two years later, at the end of 2013. The Plaintiff did not file his lawsuit until August 20, 2015. Therefore this court finds that the Plaintiff's claims against DMH regarding Ms. Howell are barred by the statute of limitations.[10]

## CONCLUSION

Wherefore, it is **RECOMMENDED** that the Defendant South Carolina Department of Mental Health's Motion for Summary Judgment (Dkt. No. 30) be **GRANTED**.[11]

IT IS SO RECOMMENDED.

May 22, 2017

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[10] All of the remaining claims in this case are against DMH and under the Act. In the alternative, the district court may remand this case for disposition in state court pursuant to 28 U.S.C. § 1367(c)(3). *See Hinson v. Norwest Fin. S. Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001) (holding after all federal claims were dismissed that principles of pendant jurisdiction applied and "a court may dismiss the claim or, if it was removed, remand it to State court").

[11] DMH additionally moves for summary judgment on the Plaintiff seeking attorney's fees. (Dkt. No. 30.) The Plaintiff concedes he is not entitled to attorney's fees. (Dkt. No. 33.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

>   **Robin L. Blume, Clerk**
>   **United States District Court**
>   **Post Office Box 835**
>   **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).